245 P.2d 841

### In re HASKEW'S ESTATE.

### HASKEW v. HASKEW et al.
### No. 5499.

Supreme Court of New Mexico.
June 24, 1952.

McGHEE, Justice.

The questions for decision in this case are whether Luther Lee Haskew, deceased, was the illegitimate son of Sam Brown Haskew, deceased; and, if so, whether the latter recognized the relationship and such recognition was general and notorious, as required by Sec. 31–118, N.M.S.A., 1941 Compilation, which reads:

"Illegitimate children shall inherit from the mother and the mother from the children; they shall inherit from the father whenever they have been recognized by him as his children, but such recognition must have been general and notorious, or else in writing, and if such recognition be in writing it must have been signed by the reputed father in the presence of at least two [2] competent witnesses and must be such as to show upon its face that it was so signed with the intent of recognizing such children as heirs."

The trial court found Sam B. Haskew was the father of Luther Lee Haskew, that he recognized said child as his own and that such recognition was general and notorious. There is no claim of written recognition.

The appellant challenges the sufficiency of the evidence to sustain such findings. There is sufficient substantial evidence to sustain the finding of paternity, but not so as to the issue of general and notorious recognition.

Compton & Compton, Portales, for appellant.

J. T. Morgan, Portales, for appellees.

Our statute as to general and notorious recognition is the same as the Iowa and Kansas statutes on the subject. This court stated in Sanchez v. Torres, 35 N.M. 383, 298 P. 408, 409:

"Counsel respectively have brought to our attention most of the Iowa and Kansas decisions. Those authorities are of greatest importance because the statutory requirements of those two states are the same as ours in the matter of general and notorious recognition. They furnish many examples both of sufficient and of insufficient evidence. They could serve only as guides, because, as it has been often remarked, each case has its own peculiar facts.

"The case at bar includes the usual features of direct evidence of paternity furnished by the testimony of the mother, testimony of association between the mother and the putative father, testimony of contribution by the putative father to the support of the mother and children, testimony of common report in Willard, where the affair took place and the children were born, that the deceased was their father, and testimony of direct and express admission on the part of the putative father in private conversation.

"If this were all we might have a close case, tested by the precedents referred to. * * *"

The court then recited other evidence relating to birth certificates and their weight as proof, and held the trial court had erred in sustaining a demurrer to the evidence of the plaintiffs, who claimed the deceased was their father. On rehearing the court withdrew its remarks as to the weight to be given the evidence, to the end the trial judge might not be influenced by such remarks. However, the statement "If this were all we might have a close case, tested by the precedents referred to," is illustrative of the strong proof required by Iowa and Kansas courts to sustain a finding of general and notorious recognition by the claimed father. We quote from Watson v. Richardson, 110 Iowa 673, 80 N.W. 407, 414, on the purpose of the statute, the definition of the words involved, and the extent of the recognition:

"* * * The very evident purpose of the statute is to guard against the perpetration of fraud, which might not be difficult if inheritance depended on proof of paternity alone; for how were it possible to punish for perjury, or even to detect it in the testimony of, witnesses who might furnish proof of relationship and recognition by recalling admissions of the deceased made when none other were present to hear? Whenever, under such circumstances, the cupidity and avarice of dishonest men were excited by the prospect of

great gain, neither the estate nor the character of the dead would be safe from the fraudulent attack. In re Jessup's Estate, [21] Cal. [408] 21 P. 976 [22 P. 742, 1028, 6 L.R.A. 594]. For these reasons, not only proof of parentage and recognition are required, but, in order to confirm these, such recognition must be shown to be general and notorious. Webster defines 'general' as 'common to many, or the greatest number; widely spread; prevalent; extensive, though not universal.' See 8 Am. & Eng.Enc.Law, 1292. In Blair v. Howell, 68 Iowa, [619] 621, 28 N.W. 199, this court, though divided, held that an occasional denial by the putative father would not obviate a finding that recognition was general, and also that the notoriety of the recognition is sufficient, if as wide as the circumstances of the case will admit. 'Notorious' is defined by Webster as 'generally known and talked of by the public; universally believed to be true; manifest to the world.' Straus v. [Imperial Fire] Insurance Co., 94 Mo. 182, 6 S.W. 698. See Seay['s heirs] v. Walton['s Devisees] 5 T.B.Mon. [Ky.] 368. Both of these words are used in the statute with the design of emphasizing the thought that the understanding of the father's recognition should be as extensive as the immediate community of his residence, and within the common knowledge of the public."

In the case under consideration the general and notorious recognition sought to be shown was in the birthplace of the claimed illegitimate son in the little community of Pikeville, Tennessee, in the year 1888.

The appellees sought to establish such recognition there by the depositions of two witnesses, one a brother of the mother of the claimed illegitimate, and the other a resident of the community.

The brother testified Sam Brown Haskew admitted to him and two others that he was the father of the child, that such fact had general and notorious recognition in the community, having been told by both Sam Haskew and the mother; while the other witness, who was supposed to have heard the confession, stated the recognition that Sam Brown Haskew was the father of the child was notorious and general, that such report was due to the statements of the mother, and he had never heard that Sam Brown Haskew had made such a statement.

We have, then, a claim of general and notorious recognition by the father in Tennessee, the former home, on the part of the claimed father supported by the deposition of only one witness, who was the brother of the mother of the child. It is in effect disputed by the deposition of the other

witness, who, it was claimed, heard Sam Brown Haskew make such statement of recognition.

 Clear proof of general and notorious recognition by the father is just as essential as proof of paternity in order to allow an illegitimate to inherit. By none of the standards set in the Iowa and Kansas cases, to say nothing of our statement in Sanchez v. Torres, supra, can it be held sufficient proof was introduced to establish general and notorious recognition by the father. See Watson v. Richardson, supra; McLean v. McLean, 92 Kan. 326, 140 P. 847; Record v. Ellis, 97 Kan. 754, 156 P. 712; and Diver v. Fourth National Bank of Wichita, 132 Kan. 36, 294 P. 924, 927.

We realize it is difficult to secure witnesses to establish such facts after a lapse of sixty years, but the statute which modifies the common law rule that an illegitimate child may not inherit from its father is strict, the temptation to assert false claims is great, and clear and convincing proof must be furnished by those who would bring themselves within the terms of the statute and share with the legitimate heirs the estate of a deceased person.

The statute requires that a written acknowledgment of paternity by a father be made in the presence of at least two competent witnesses, so it could not reasonably be said it was the intent of the legislature that general and notorious oral recognition by the father could be established by the testimony of one witness.

The judgment will be reversed and the cause remanded to the District Court with instructions to set aside its former judgment and to enter one denying the claims of the appellees.

It is so ordered.

LUJAN, C. J., and SADLER and COORS, JJ., concur.

COMPTON, J., not participating.